The White Company, Appellant, *v.* Francis.

Argued December 11, 1928.

Before TREX-
LER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.

*George Wanger,* and with him *Joseph A. Allen* and *William F. Brennan,* for appellant.—Where a written agreement constitutes the entire contract between the parties no implied warranties can be raised: Gianni v. Russell & Co., Inc., 281 Pa. 320; Neville v. Kretzschmar, 271 Pa. 222; Wagner v. Marcus, 288 Pa. 579; Lake Erie Nursery & Seed Co. v. Edwards, 86 Pa. Superior Ct. 103; York Heating Co. v. Flannery, 87 Pa. Superior Ct. 19.

*Henry A. Frye,* and with him *Fletcher W. Stites,* for appellee.—In a contract for a conditional sale of

an automobile truck for a specific purpose, there is an implied warranty that the truck shall be reasonably fit for the purpose for which it was sold: Callahan v. Gorson, 65 Pa. Superior Ct. 329; Hoffman v. Auto Co., 75 Pa. Superior Ct. 527; Farr v. Zeno, 81 Pa. Superior Ct. 509; Land v. Automobile Finance Co., 73 Pa. Superior Ct. 116.

OPINION BY GAWTHROP, J., January 25, 1929:

On May 13, 1926, the plaintiff delivered a new five ton dump automobile truck to the defendant under a bailment lease, in which the lessee acknowledged delivery and acceptance in good order, for a term of nineteen and sixteen thirtieths months at a total rental of $5,788.20. By the terms of the lease the defendant received a credit for $590 paid in cash and a credit for $700 on a "trade in," making a total of $1,290 on account of the total rental, leaving a balance of $4,498.20, payable in seventeen monthly installments of $250 per month and one installment of $248.20, as shown in the schedule of rental printed in the instrument. The lease provided that upon its termination the lessee would re-deliver the truck to the lessor, but that upon full payment of the rent he might elect to become the owner of it upon payment to the lessor of the additional sum of $1 within thirty days after the termination of the lease; that if the defendant made any default in the performance of any condition or covenant therein, the entire unpaid rent should immediately fall due and the lessee should forthwith deliver the truck to the lessor without any abatement of rent, and that the re-taking of the truck by the lessor should not deprive it of its action against the lessee for rent; that if the lessee should violate any covenant therein the lessor should have the right to terminate the lease forthwith and thereupon any attorney of any court of record was authorized, as attorney for the

lessee, to sign an agreement for entering an amicable action of debt in any court of competent jurisdiction and appear for and confess judgment therein against the lessee for all unpaid rentals thereunder; and that "the terms, stipulations and conditions of this agreement have been read and are understood by the lessee and no alterations, modifications or abridgments thereof shall be had unless in writing, duly signed by the parties thereto and attached hereto, and that this agreement constitutes the entire contract between the parties hereto, all previous communications between the lessor and lessee, both verbal and written, being abrogated and withdrawn." The defendant took possession of the truck immediately and used it for more than six months, when the plaintiff re-took it under the terms of the lease. Judgment against the defendant, for the amount of the rent due and payable during the time he had possession of the truck, was entered in an amicable action brought by virtue of the warrant contained in the lease. Whereupon, the defendant filed his petition to open the judgment on the ground that the truck, when put into service, was found to be "defective and not capable of performing the work for which it was purchased." He averred that the plaintiff had knowledge of the defects and attempted to remedy them, but without avail, and that finally it re-took possession of the truck in November, 1926, under the terms of the lease. After an answer was filed and depositions were taken on behalf of the defendant, the court below made absolute the rule to open the judgment. The plaintiff brings this appeal.

The testimony of the defendant and his witnesses undenied by the plaintiff, was to this effect: When the truck was delivered it was apparently in good condition, but its operation by the defendant disclosed mechanical defects, disclosable only by operation,

which rendered it incapable of performing the service for which it was manufactured. It was equipped with a hoist, an equipment used for dumping the load. From the beginning the "hoist didn't work" and the operator was unable to use it to dump the load. The gasket heads blew out and could not be kept in. Most of the time it was necessary to tow the truck in order to start the motor and when the motor was started the machine developed little power. It was practically useless to the defendant. The plaintiff was notified of these matters and on numerous occasions took possession of the truck and undertook to put it in good operating condition, but the defendant continued to have the same trouble with it until it was re-taken by the plaintiff.

We think that this evidence raised for the jury the question whether the truck was reasonably fit for the purpose for which it was manufactured and leased. The plaintiff did not undertake to prove that it was. Nor did it undertake to show that the defects were due to improper use of the truck or any cause for which the defendant was responsible. An entirely different state of facts may appear at the trial.

The court below, recognizing that under the terms of the lease evidence of express warranties inducing the execution thereof by the defendant was inadmissible, grounded his action in opening the judgment on the principle of law that where one furnishes to another for hire a thing for use, there is an implied warranty, arising by operation of law and not resting upon any agreement in fact, (Hoe v. Sanborn, 21 N. Y. 552, 564), that the thing is reasonably fit for the use for which it was hired.

Counsel for the appellant stands upon the sanctity of his contract, and contends that the effect of this conclusion is that a written agreement does not mean

what it says; and that even if the parties have in terms agreed that the written instrument is the entire contract, nevertheless the court may imply certain additional features which modify it to an extent not contemplated by the parties, and that the parties could never embody in an instrument all of its terms. We are not impressed by this argument.

The doctrine in Ridgeway Dynamo & Engine Co. v. Penna. Cement Co., 221 Pa. 160, followed in Tranter Mfg. Co. v. Blaney, 61 Pa. Superior Ct. 379, and Myercord Co. v. Qwilliam Mfg. Co., 85 Pa. Superior Ct. 34, that parties can make an agreement which embodies all the details of the subject of which they treat, and may still safeguard themselves from any future trouble by providing against the contingency of disputes arising by reason of alleged verbal engagements by stipulating that the writing contains the entire contract and that no oral arrangements will be recognized, has up to this time been applied in this state only in cases in which the effort was to modify the writing by evidence of acts of the parties establishing that the agreement was not that reduced to writing. Of course, this doctrine would exclude evidence of an express warranty. But to our knowledge it has never been held to protect a party to the contract against an implied warranty, which arises by operation of law and not by agreement of the parties.

From their nature implied warranties attach to a written as well as to an unwritten contract of sale, unless expressly excluded from the agreement: Carleton v. Lombard Ayres & Co., 149 N. Y. 137, 146, 43 N. E. 422. Here there was no such exclusion. "One who lets property for hire may reasonably be subjected to the same implied warranties as one who sells goods. Therefore, the bailor is liable if he knowingly furnishes property unsuitable for the purpose for which

it is hired:'' Williston on Contracts, Vol. 2, Sec.
1041, pg. 1956. See also 6 C. J., Sec. 52, pg. 1117, and
cases there cited. It was held in Conn v. Hunsberger,
224 Pa. 154, that when a bailor lets a horse for hire
there is an implied warranty that the horse is fit
and suitable for the purpose for which it is hired.
This principle was recognized in Pneumatic S. Corp.
v. Ideal C. & C. Co., 62 Pa. Superior Ct. 30, in which
KEPHART, J., used this language: ''While the bailor
impliedly warrants that the thing hired is of a char-
acter and in a condition to be used as contemplated
by the contract of bailment, yet where the parties by
an express contract reduced to writing regulate the
conditions under which the hiring takes place, this
writing will become the rule by which their rights
against each other are determined.'' The express
condition in that case was that the bailee should keep
the machine in good order and repair. Through his
negligence it became unfit for use. The case did not
turn on the question of the effect of an implied war-
ranty unaffected by the terms of the contract. In
Hoisting Engine Sales Co. v. Hart, 237 N. Y. 30, 142
N. E. 342, where the action was to recover rental re-
served in the lease of a chattel and the defendant
counterclaimed by setting up a breach of warranty of
fitness and demanded damages suffered by the breach,
it was held that a breach of the implied warranty was
a sufficient defense. If such an implied warranty
exists in a bailment in which no sale is contemplated
by the parties, there would seem to be still more rea-
son for the application of that principle where the
real purpose of the bailment is an ultimate sale to the
lessee, the analogy to a sale being much closer in
such a case. The acceptance and use of the truck by
the defendant did not discharge the plaintiff from
liability in damages for breach of the implied war-
ranty in the contract. He could bring an action for

the breach of the contract or defend against the payment of the balance of the rent. We do not regard any of the reasons suggested by the able counsel for the appellant as sufficient to justify the reversal of the order. As the evidence raises a question of fact for the jury, the chancellor properly exercised his discretion.

The order is affirmed.

KELLER, J., dissents.